OPINIONS OF THE SUPREME COURT OF OHIO
**** SUBJECT TO FURTHER EDITING ****

The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.

Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.

NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

Dayton Bar Association v. Rab.
[Cite as Dayton Bar Assn. v. Rab (1994),      Ohio St.3d     .]
Attorneys at law -- Misconduct -- Two-year suspension with one
     year suspended and one-year monitored probation with
     continued psychological counseling -- Engaging in conduct
     involving dishonesty, fraud, deceit or misrepresentation
     -- Withdrawing from representation without taking
     reasonable steps to avoid foreseeable prejudice to the
     rights of the client -- Neglecting an entrusted legal
     matter -- Intentionally failing to seek lawful objective
     of clients through reasonably available means permitted by
     law -- Failing to carry out contract of employment --
     Prejudicing or damaging clients during course of
     professional relationship -- Failing to assist in
     investigation of complaint.
     (No. 94-972 --  Submitted November 15, 1994 -- Decided
December 20, 1994.)
     On Certified Report by the Board of Commissioners on
Grievances and Discipline of the Supreme Court, No. 93-20.
     By amended complaint filed on August 12, 1993, relator,
the Dayton Bar Association, charged that respondent, Laurence
J. Rab of Dayton, Ohio, Attorney Registration No. 0020852, had
committed seven separate acts of misconduct, and that he had
thereby violated DR 1-102(A)(4) (engaging in conduct involving
dishonesty, fraud, deceit or misrepresentation), 2-110(A)(2)
(withdrawing from representation without taking reasonable
steps to avoid foreseeable prejudice to the rights of his
client, including not giving due notice to the client and
delivering to the client all property and papers to which the
client is entitled), 6-101(A)(3) (neglecting a legal matter
entrusted to him), 7-101(A)(1) (intentionally failing to seek
the lawful objectives of his clients through reasonable
available means permitted by law), 7-101(A)(2) (failing to
carry out a contract of employment for professional services),
7-101(A)(3) (prejudicing or damaging his clients during the

course of a professional relationship), and Gov. Bar R. V (failing to assist in the investigation of a complaint). Respondent was served with the complaint, and filed an answer admitting most of the facts and nearly all of the alleged violations of the complaint.

The matter was submitted to a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") after an oral hearing on March 15, 1994, and upon the joint stipulation of the parties. The evidence at hearing and the joint stipulation reflect that respondent was guilty of the seven separate counts of misconduct alleged in the complaint. When these matters arose, respondent was in private practice in Dayton, Ohio.

## Gibson

Respondent was retained by Renny Gibson to file suit on an insurance claim against her insurance agency, Baldwin and Whitney, on a commercial crime-insurance policy. The policy provided coverage for up to $15,000 if a robbery occurred outside Gibson's premises when the property being conveyed by messenger was accompanied by an armed guard. If the messenger was not accompanied by an armed guard, the policy provided coverage of only $5,000. A dispute arose between Gibson and the insurance company regarding whether or not Gibson's armed friend constituted an armed guard under the policy. Respondent was hired to file a suit against the insurance company and its agent, who had represented to Gibson that having an armed person accompany the messenger was adequate to trigger the higher coverage. The agent denied the comment.

A case was filed in federal court to determine coverage and the policy limits. The case was heard on cross motions for summary judgment. The insurance company's motion was granted. The motion filed on behalf of Gibson was denied.

Thereafter, respondent had occasional contact with Gibson for two and a half years. During that time, respondent indicated that he was going to pursue an action against the agent and insurance company. Respondent mislead Gibson by representing that an action had been filed, when, in fact, no action had been filed against either the insurance company or its agent. Further, respondent had made little effort to research or prepare for such a suit.

In the ensuing months, respondent created the illusion that a lawsuit was in progress, performing such actions as taking Gibson to the alleged trial judge's office and making representations that the judge was performing various actions in Gibson's case. Ultimately, respondent admitted to Gibson's daughter that no case had been filed.

## Jones

Diane L. Jones (n.k.a. Diane L. Archild) retained respondent to represent her in a false-arrest claim against two city of Dayton police officers. Litigation was initiated by respondent on January 4, 1990, against two John Doe officers. On January 31, 1990, the city of Dayton filed a motion to dismiss the case on the basis that the officers had not been identified. The city also sought discovery from respondent regarding the claimed incident. Respondent provided no response to the discovery. The city filed a motion to compel discovery, and respondent failed to provide any discovery. On

November, 20, 1990, the city's motion to dismiss the case was granted.

Jones then moved to North Carolina where she remained until the spring of 1992. Before Jones' leaving, respondent assured her that her case would continue. Upon Jones' return to Dayton in 1992, respondent informed her that her case had been settled for $2,500 and that she would receive her payment shortly. Respondent took Jones to the courthouse on more than one occasion to allegedly discuss the city's failure to pay the settlement.

On October 29, 1992, Jones called the Montgomery County Common Pleas Court and learned that her case had been dismissed almost two years earlier. Respondent, unaware of Jones' telephone call to the court, continued to promise that payment would soon be made. As a result of this incident, respondent was contacted by an investigator from the Professional Ethics Committee of the Dayton Bar Association.

### Walker

Evelyn G. Walker retained respondent to bring a lawsuit against John Babs, concerning a used car that she had purchased. Approximately three years later, Walker was advised that respondent had filed the suit, that a judgment had been obtained, and that a garnishment was required to obtain the damages which had been ordered. No suit had ever actually been filed. Respondent personally made payments to Walker on a monthly basis from his general office account. After approximately one year, Walker contacted respondent's office regarding when she could expect another payment. Respondent did not respond to Walker's inquiries, and she contacted the Dayton Bar Association.

### Folley

Emmitt Folley was a passenger in an automobile which was involved in an accident in March 1988. After the collision, he sought treatment in a Miami Valley hospital complaining of a sore neck and lower back pain. Soon thereafter, respondent was contacted to represent Folley. Although no written agreement was entered into, the two agreed to a thirty percent contingency fee. Respondent never filed a complaint on behalf of Folley.

However, in, the months and years following the accident, respondent led Folley to believe that respondent was actively pursuing the claim. This activity resulted in respondent telling Folley that the insurance company had agreed to a settlement and that the settlement was binding. As time went by, respondent took Folley with him to the courthouse and left Folley in the hall while respondent proceeded to have conversations with several judges, allegedly about Folley's case.

In early October, 1992, respondent told Folley that the insurance company had been charged with contempt for failing to pay the settlement, and, as a result, Folley was entitled to a jury trial which was scheduled to commence on November 2, 1992. No trial ever occurred. Shortly after the trial date, Folley complained to the Dayton Bar Association. Respondent later told Folley that he had not filed the complaint because respondent had determined that Folley's claim was without merit.

## Corrigan

Henry F. Corrigan retained respondent in 1991 to obtain a divorce. Respondent told Corrigan that the divorce proceedings were under way, but that there were problems with service of process. Notwithstanding this problem, respondent assured Corrigan that the divorce would soon be granted. Respondent took Corrigan to the courthouse to meet the judge, but the judge allegedly was otherwise occupied and could not meet with Corrigan or respondent.

Respondent later referred Corrigan to a different attorney regarding other matters. Corrigan explained the problems with the divorce case to the other attorney, and then accompanied the other attorney to the courthouse where they determined that no divorce case had been filed.

## Hentrich

Respondent was retained by Monica Hentrich to be the administrator of her father's estate. Following retention of respondent, Hentrich was unable to obtain tax releases from respondent or, on some occasions, even to have respondent return her communications. In October 1991, Hentrich contacted another attorney regarding the estate. The estate's new attorney unsuccessfully attempted to contact respondent regarding the estate. The estate's new attorney did, however, learn that no estate tax return had been filed by the respondent. A subsequent investigation revealed that a probate court clerk had informed respondent that the return was to have been filed in mid-December 1991.

## Irwin

James and Cynthia Irwin and their daughter Amy reside in Richmond, Indiana. On October 6, 1986 Amy was driving her parents' car in Montgomery County, Ohio, when it was struck by an automobile operated by Kim Rankin. Although the Irwins settled the property damage portion of their claims against Rankin, certain personal-injury claims were not resolved. On October 7, 1988, the Irwins' attorney (Jean Steigerwald) filed a complaint in the Montgomery County Common Pleas Court to pursue these personal injury claims. On November 13, 1988, Steigerwald voluntary dismissed the case without prejudice so that the Irwins could find another lawyer to handle the matter. Prior to dismissing the case, Steigerwald notified the Irwins that they could refile the action within one year of its dismissal.

Just before the one-year refiling period expired, the Irwins contacted respondent to handle the matter. Respondent filed a new complaint within the appropriate period. The Irwins and respondent agreed upon and one-third contingency fee for the case. The defendants filed an answer, and on July 20, 1990, defense counsel served respondent with discovery requests. On August 2, 1990, respondent advised the Irwins by letter that the case had been scheduled to be heard by an arbitration panel on October 18, 1990, and that he needed their documented evidence for hearing and to provide it to opposing counsel.

On September 7, 1990, Mrs. Irwin mailed copies of Amy's accident-related medical bills. At this point, however, the document-production deadline had passed. Defense counsel filed a motion to compel discovery and also noticed the plaintiffs

for deposition.  The Irwins did not appear for the deposition, and defense counsel filed a motion to dismiss.  Respondent filed no response.  The court thereafter dismissed the case with prejudice.  Respondent then contacted the Irwins and advised them that he had obtained $700 to $750 for their case.  Respondent indicated that he would be sending them a check shortly thereafter.

More than a year later, respondent had failed to provide any funds or an explanation to the Irwins.  During the summer of 1992, the Irwins spoke with the judge about their concerns about the case.  With the judge's assistance, a telephone conference was held with the respondent.  As a result of this telephone conference, it was clear that respondent had either misrepresented the truth to the Irwins or intentionally mislead them as to the source of the funds that they were to receive.  The Irwins' claim was time barred when they learned the truth about their case, and the Irwins received no compensation from the defendants in a case where liability was essentially admitted..

A letter from one of respondent's peers is part of the record, attesting to his legal ability, personal integrity, and professionalism.  Additionally, two Montgomery County judges appeared and testified as character witnesses on respondent's behalf at the hearing.

Based on the joint stipulation and the hearing, the panel found violations of DR 1-102(A)(4), 2-110(A)(2), 6-101(A)(3), 7-101(A)(1), 7-101(A)(2), 7-101(A)(3), and Gov. Bar R. V.  A majority of the panel recommended that respondent receive a two-year suspension from the practice of law in Ohio, with the suspension suspended, and that he be placed on two-years' monitored probation by an attorney appointed to perform the duties required by Gov. Bar R. V(9)(B).  The minority of the panel recommended a one-year suspension from the practice of law in Ohio, with six months of the one-year to be suspended, and two-years' monitored probation.  Both the majority and minority of the panel recommended that respondent continue psychological counseling until such time as he was released from care by the psychologist.

The board adopted the panel's findings, but in view of the number and type of respondent's admitted violations, recommended that respondent be suspended from the practice of law in Ohio for two years, with one year suspended, and that he be placed on monitored probation for one year.  In addition, the board recommended that respondent continue with his current course of psychological counseling until such time as he was released by the psychologist.  The board also recommended that the cost of these proceedings be taxed to respondent.

James J. Fullenkamp, for relator.
Lawrence J. Rab, pro se.

Per Curiam.  Having thoroughly reviewed the record, we agree with the board's findings of misconduct and its recommendations.  Accordingly, respondent is hereby suspended from the practice of law in Ohio for two years, with one year of that suspension suspended, and he is placed on monitored probation for one year to be monitored by an attorney appointed

to perform the duties required by Gov. Bar R. V(9)(B).  In addition, respondent must continue his current course of psychological counseling until such time as he is released by his psychologist.  Costs taxed to respondent.

                                        Judgment accordingly.
     Moyer, C.J., A.W. Sweeney, Douglas, Wright, Resnick, F.E. Sweeney and Pfeifer, JJ., concur.